HOME LIFE INSURANCE COMPANY *v.* SWAIM.

4-5916                                    142 S. W. 2d 209

Opinion delivered May 13, 1940.

*Benjamin R. C. Low, C. A. Walls* and *Rose, Lough-borough, Dobyns & House,* for appellant.

*W. W. McCrary, Jr.,* and *Owens, Ehrman & Mc-Haney,* for appellee.

SMITH, J. Appellee had five life insurance policies. Three of them were issued by the appellant insurance company, two being for $5,000 each, and the other for $10,000. Another policy, for $14,000, had been issued by the New York Life Insurance Company. The fifth policy was issued by the Central Life Assurance Society in the sum of $8,700.

Appellee failed to pay the annual premium due December 20, 1936, on the $10,000 policy issued by appellant, and on February 1st thereafter made application for its reinstatement. For this purpose there was prepared in appellant's office in the city of Little Rock what was called a short form application, in which the representation was made that appellee was then in good health. This application was deemed insufficient by the insurance company, which mailed appellee a long form of application for reinstatement. A medical examination was required to answer the questions contained in this long form of application.

Appellee, who did not reside in Little Rock, brought this application blank to appellant's office in Little Rock

on March 24, 1937. Appellee testified that he told the company's general agent, who assisted in filling out the blank, that his family physician had advised him that he had diabetes, and he inquired of the agent if the presence of this disease entitled him to the benefits for which the policy provided in case of total disability, and the agent stated that he did not think so. The agent said, however, that he would have Dr. Fulmer examine appellee, and this examination was made, and Dr. Fulmer stated that appellee was in good health and might be accepted for the Army but for his age. Thereafter the application was completed and forwarded to the company for approval. It recited that appellee was in good health. The agent said to appellee: "You need not worry; you are reinstated."

This is a suit to collect the disability benefits provided for in this $10,000 policy. It is not insisted that the policy was ever in fact reinstated. Appellee knew that the application for reinstatement was not being prepared for the agent's inspection and approval, but for that of the company at its home office in the city of New York, and that the application would have to be sent, and that it was sent, to the company in New York for approval.

The theory of the case is that appellee was disabled on March 24, 1937, and that an application for reinstatement was made that date, being within less than six months of the date when the policy lapsed through nonpayment of the premium, and that his statement to the company's agent and examining physician that he then had diabetes was sufficient proof of that fact and rendered more formal proof unnecessary.

Appellee further testified that his illness began in August, 1936, and had grown progressively worse, and it appears from the record before us that appellee, at the time of the trial, was totally disabled within the meaning of the policy. Claim for disability benefits under his two $5,000 policies in appellant company was later made, and allowed, and these benefits are now being paid him in the sum of $100 per month. Appellee

was assisted by his family physician in completing the disability claim blanks for these benefits, which fixed November 29, 1937, as the date of the commencement of total disability. A claim for disability benefits was also filed with and allowed by the Central Life Assurance Society. This claim fixed the beginning of total disability as of November 19, 1937. A claim for the disability benefits was also filed on the New York Life Insurance Company policy, which asserted that the disability commenced in November, 1937. This claim has not been allowed.

The family physician, above referred to, testified, at the trial from which is this appeal, that appellee had been totally disabled since December, 1936. He further testified that he diagnosed the case on December 31, 1936, as diabetes, and that he put appellee on a diabetic diet, and in February thereafter started the use of insulin. He explained his certificate above referred to by saying that disability benefits were only claimed since November, 1937, at which time the first hypertension was discovered. He explained that as long as there are no complications, and one takes insulin, nature will work a compensation, but when hypertension develops it becomes serious.

Appellant's agent at Little Rock and Dr. Fulmer, both denied that appellee told them that he had diabetes. Dr. Fulmer admitted telling appellee and the agent that he had found no sugar in appellee's urine, but he explained that its presence would not be disclosed by the urinalysis which he made where the patient was on a diabetic diet and was taking insulin, unless the case was well advanced.

Appellee's policy in the New York Life Insurance Company had also been allowed to lapse on account of the nonpayment of premium, but it was reinstated on an application made March 29th, in which appellee stated that he was then in good health. The recent examination made by Dr. Fulmer only five days before was referred to as proof of that fact. This application to reinstate the New York Life insurance policy was no doubt made in

good faith and had accomplished its purpose, and that policy was reinstated. This emphasizes and makes certain the fact that when appellee appeared before appellant's agent on March 24th, it was not for the purpose of making proof of disability, but was for the purpose of having the policy reinstated. It is a contradiction in terms to say that at one and the same time appellee was endeavoring to have his policy reinstated, which required the showing that he was then in good health, yet, in doing so, he made such disclosures as to the state of his health as constituted such notice of his total disability as would waive further proof of that fact. It is not disputed that, regardless of what was said or done at the conference in Little Rock on March 24th, the application for reinstatement was forwarded to appellant at its New York office, and this application contained the representation that appellee was then in good health and, in effect, that he was a fit subject for life insurance.

This long form of application for reinstatement was duly received by appellant at its home office in New York city, and, upon comparison with the original application for the insurance, it was discovered that appellee had sustained a considerable loss in weight. It appeared also that appellee's blood pressure was not normal. The application was, therefore, returned to appellee with directions to appear before the physician for further examination. This appellee did not do.

A daughter had been born to appellee since the issuance of the policies, and they were delivered to the general agent on March 24th in Little Rock to have the named beneficiaries changed to include this daughter, and the policy here in suit remained in possession of the agent. The other two policies were returned, after the beneficiaries had been changed as requested. The agent was anxious to have the policy reinstated, and to that end he wrote appellee several letters urging him to complete the examination, and advising him that he would have the policy here in suit changed to include the daughter when the required proof had been completed.

On February 4, 1938, appellee wrote the appellant's agent the following letter: "After talking it over with my wife, we have decided not to re-instate the other policy. Since I will not be in L. R. Monday will you go ahead with the other plan to obtain loan enough to cover this policy for one year and $170 to cover the Central Life Insurance policy.

"If you can—also advise as to how much more loan value is left on my policy this year above this loan."

It will be observed that this letter contained no intimation that proof of disability had been made or that the making thereof had been waived, notwithstanding the fact that on May 26, 1937, the appellant insurance company had written appellee the following letter:

"Dear Sir:—We are very sorry that we are unable to proceed with the reinstatement of the policy since the present requirements have not been complied with. We are therefore returning herewith the loan agreements bearing your signature. In accordance with the non-forfeiture provisions of this policy, we have applied the net cash value to purchase paid up net term insurance of $7,261 expiring without value on September 20, 1937."

The policy provided for this use of the net cash value of the policy in the absence of a different election by the insured.

Thus the matter appears to have rested until January 18, 1938, at which time appellee had employed attorneys to represent him, who, on the date just mentioned, wrote the company asking for a blank on which to make formal proof of disability. When this request was not complied with, suit was filed to enforce payment of the disability benefits, and from a judgment awarding them is this appeal.

The policy here sued on contained the following provisions: "In case a premium under this policy and under this agreement or any instalment thereof is in default and if at the due date of the premium in default the insured was so disabled as to be entitled to the dis-

ability benefits under this agreement had due proof been submitted at that date, then the benefits will be granted if such proof be furnished within six months after the. due date of such premium in default and while the insured is still totally disabled; provided, however, that in no event shall benefits accrue more than six months prior to the date of receipt of such due proof.''

This identical provision appears in the opinion in the case of *New York Life Insurance Company* v. *Moose,* 190 Ark. 161, 78 S. W. 2d 64, and in that case was construed as follows: ''In other words, the disability must commence before default in premium payment, and the benefits will then be granted 'provided due proof . . . is received by the company not later than six months after said default.' This proviso simply states the conditions under which disability benefits will be granted. It necessarily excludes all others. If the disability occurs before default and proof thereof is made within six months thereafter, the disability is covered; otherwise it is not. The general rule is that the failure to give notice or to make proof within a specified time in accordance with the terms of the policy does not operate as a forfeiture of the right to recover, unless the policy in express terms or by necessary implication makes same a condition precedent to recovery. *Hope Spoke Co.* v. *Maryland Casualty Co.,* 102 Ark. 1, 143 S. W. 85, 38 L. R. A., N. S., 62, Ann. Cas. 1914A 268. Here the requirement is condition precedent in express terms, as it is the condition on which the benefits are granted. See, also, *N. Y. Life Ins. Co.* v. *Farrell,* 187 Ark. 984, 63 S. W. 2d 520; *N. Y. Life Ins. Co.* v. *Jackson,* 188 Ark. 292, 65 S. W. 2d 904. In the latter case we held, to quote the syllabus: 'Under the terms of a policy of life insurance,. it was the proof of disability and not the fact thereof that was essential for recovery of disability benefits under a policy of life insurance.'

''Not having made the proof within the time required by the policy, assuming that there was a question for the jury as to disability before default, the court erred in directing a verdict for appellee.

"Judgment reversed."

Here, default was made in the payment of the premium on December 20, 1936. It was, therefore, essential that proof of the disability be made not later than June 20, 1937. Appellee insists that under the testimony herein recited proof was made on March 24, 1937, and that appellant is estopped from asserting that proof was not formally made.

The jury, by its verdict, sustained that contention; but we think the testimony insufficient to support that finding. We do not think any reasonable view of the testimony herein recited would sustain that conclusion. We assume as true the testimony of appellee that he told both the agent and the examining physician on March 24 that he had diabetes, although the agent and the physician denied that statement. We assume also as true that, when asked if diabetes constituted such disability as would entitle appellee to the disability benefits of the policy, the agent answered that he did not think so. This was only the opinion of the agent, but may have been correct, and was correct if the total disability did not begin until November, 1937.

The insured in the case of *Aetna Life Ins. Co.* v. *Martin,* 192 Ark. 860, 96 S. W. 2d 327, sought to recover total disability benefits resulting from diabetes from which he suffered. It was there said: "This inquiry, therefore, narrows to a determination of whether we shall declare as a matter of law that one suffering from a pronounced case of diabetes is not totally and permanently disabled." The opinion answered this question saying: "Even so in the instant case, it is and should be a question of fact for ascertainment by the tryers of fact, whether one suffering from diabetes is able to perform substantially all the material duties of his vocation."

It is not true, therefore, that one would be entitled to total disability benefits simply because he had diabetes, and certainly not if he would be accepted as a soldier but for his age. Appellee knew at least as much about his condition as did the agent, and we think no

estoppel arose from the expression of the witness' opinion, and did not constitute a waiver of the formal proof for which the policy provided. It must not be forgotten that thereafter appellee completed the application for reinstatement upon the representation that he was not totally disabled but was in good health, and that representation was repeated five days later in the application to the New York Life Insurance Company to reinstate the policy issued by that company, which policy had lapsed.

It is finally insisted that the judgment should be affirmed and that a verdict in appellee's favor might have been directed upon the theory that the net cash value of the policy was sufficient to have paid the premium for an additional quarter of a year and to a time when total disability clearly existed. It is argued that this fact is shown by the testimony of an insurance actuary and in the fact that a note was taken for the premium which would have been effective had the policy been reinstated.

It would unduly protract this opinion to review all the testimony on this issue. But it may be said that the complaint raised no such question, and this issue was not submitted to or passed upon by the jury. It further appears that the witness who made the calculation upon which this argument is based erroneously assumed the outstanding indebtedness against the policy to be $2,739, when it was in fact $2,822.67, and that but for this error the net value of the policy was not sufficient to have paid a quarterly premium. But even though the net value of the policy had been sufficient to pay an additional quarterly premium, this quarter would have expired March 20, 1937, when the policy would again have lapsed. *Burton v. Pyramid Life Ins. Co.*, 198 Ark. 688, 130 S. W. 2d 706.

Upon the question that the offer to accept a note for the premium evidences the fact that the net value of the policy was not used—as it might and should have been—in paying the premium, it appears that appellee was proposing to use, not merely the net cash value on the policy here in suit, but the value of the two other

policies also for that purpose. Upon this subject the agent wrote appellee on February 15 as follows: ''Referring to the reinstatement of your policy No. 347020 and the increased loan on your other two policies above numbered, we will appreciate it if you will call by our office at your earliest convenience, etc.''

Again, on March 9, 1937, the agent wrote appellee as follows: ''In order to increase the loans on your other two policies No. 339,952-3 to cover part of the premium on your other policy, the enclosed new notes together with request that these proceeds be applied in this manner should be completed and returned.''

The offer to accept a note upon the reinstatement of the policy for the premium does not, therefore, evidence the fact that the policy here in suit had a net value sufficient to pay the note.

We conclude, therefore, upon the authority of the case of *New York Life Ins. Co.* v. *Moose, supra,* that proof of disability was not made within the time and in the manner required by the policy, and also that the making of this proof had not been waived, and the judgment must, therefore, be reversed, and as the cause appears to have been fully developed, it will be dismissed.

McHANEY, J., not participating.